# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 21-3467

GARY L. FERKO, APPELLANT,

V.

DENIS MCDONOUGH,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Decided May 28, 2024)

*Michael D.J. Eisenberg*, of Washington, D.C., was on the brief for the appellant.

*Richard A. Sauber*, General Counsel; *Mary Ann Flynn*, Chief Counsel; *Edward V. Cassidy, Jr.*, Deputy Chief Counsel; and *Catherine D. Vel*, all of Washington, D.C., were on the brief for the appellee.

Before BARTLEY, *Chief Judge*, and PIETSCH, GREENBERG, ALLEN, MEREDITH, TOTH, FALVEY, LAURER, and JAQUITH, *Judges*, and SCHOELEN, *Senior Judge*.[1, 2]

TOTH, *Judge*, filed the opinion of the Court. FALVEY, *Judge*, filed a concurring opinion in which PIETSCH, ALLEN, TOTH, and JAQUITH, *Judges*, joined. JAQUITH, *Judge*, filed a concurring opinion. SCHOELEN, *Senior Judge*, filed a concurring opinion in which BARTLEY, *Chief Judge*, and GREENBERG and LAURER, *Judges*, joined.

TOTH, *Judge*: This legacy case concerns Navy veteran Gary L. Ferko's two-decades-long attempt to have VA accept a Notice of Disagreement (NOD) that he submitted beyond the appeal period.[3] The relevant statute at the time specified that an NOD "shall be filed within one year from the date of mailing of notice of the result of initial review or determination." 38 U.S.C. § 7105(b)(1)

---

[1] Judge Schoelen is a Senior Judge acting in recall status. *In re Recall of Retired Judge*, U.S. VET. APP. MISC. ORDER 03-24 (Jan. 3, 2024).

[2] The case was argued before a panel of the Court on June 22, 2023. Following a request for en banc consideration by a Judge in active service and a vote among the Judges in regular active service, the case was submitted to the en banc Court on January 9, 2024. *See* U.S. VET. APP. IOP VII(b)(2).

[3] By "legacy case," we mean that our analysis pertains to the "legacy" adjudicatory system in place before VA's implementation of the Veterans Appeals Improvement and Modernization Act of 2017 ("AMA"), which established the "modernized" system and went into effect on February 19, 2019. *See* Pub. L. No. 115-55, § 2(x), 131 Stat. 1105, 1115; VA Claims and Appeals Modernization, 84 Fed. Reg. 2449, 2449 (Feb. 7, 2019). At present, the legacy system and the modernized system coexist, *see generally* 38 C.F.R. § 3.2400 (2023), and will continue to do so until the former falls into desuetude.

(2000 & Supp. III 2004). (All further citations to section 7105 are to this version.) After undergoing emergency open-heart surgery, Mr. Ferko submitted an NOD only two weeks after the one-year deadline had passed. As part of his submission, he requested an extension based on "good cause," citing his surgery.

The VA regional office (RO) informed Mr. Ferko that his NOD was untimely. It never considered his extension request, however. Reviewing the matter years later, the Board issued a confusing decision. It first ruled that an NOD filed outside the one-year deadline for doing so is untimely, and "an untimely [NOD] deprives the Board of jurisdiction to consider the merits of an appeal." R. at 9. And yet despite this jurisdictional ruling, the Board went on to consider and reject the veteran's request for a "good cause" extension of the filing deadline, while using the language of "tolling." *Id.* Mr. Ferko appeals and argues that the Board should have equitably tolled the one-year NOD filing deadline.

The Board's first ruling is legally erroneous. The one-year deadline in section 7105(b) to file an NOD in the legacy system is not a jurisdictional bar to Board review. It is an important and mandatory claim-processing rule, but it does not deprive the Board of the authority to consider the merits of an appeal simply because the NOD is received late. As a nonjurisdictional claim-processing rule, section 7105(b)'s one-year period is amenable to an appropriate exception. Indeed, this is exactly what a current VA regulation allows, as our caselaw has long held that 38 C.F.R. § 3.109(b) applies to NODs. That regulation permits extensions to VA's internal deadlines for good cause. It is under this governing regulatory standard that the Board should have considered and adjudicated Mr. Ferko's extension request. But despite the lengthy passage of time, VA has still not issued a decision evincing a proper understanding of § 3.109(b)'s role in permitting it to accept the veteran's untimely NOD. We vacate and remand for the Board to undertake that analysis.[4]

## I. BACKGROUND

Mr. Ferko served honorably in the Navy from 1966 to 1969 and from 1970 to 1987. In September 2003, he sought disability compensation for chest pains, shortness of breath, fatigue,

---

[4] Mr. Ferko's Notice of Appeal (NOA) lists March 4, 2021, as the date of the Board decision on appeal. However, that is the date the Board Chairman denied his motion for reconsideration of the June 12, 2020, Board decision. We construe the veteran's NOA as appealing both the Chairman's denial of reconsideration and the underlying June 2020 Board decision. *See Losh v. Brown*, 6 Vet.App. 87, 90–91 (1993). Because we conclude that the underlying Board decision must be vacated and the matter remanded, however, any appeal as to the Chairman's denial of reconsideration is moot.

and heart abnormalities, which we'll refer to collectively as a heart disability. The RO denied the claim in a November 2, 2004, rating decision, which was mailed to the veteran three days later together with a notification letter and notice of his appellate rights.

On November 14, 2005, Mr. Ferko submitted an NOD as to the denial. Therein, he explained that he had undergone emergency cardiac surgery in March 2005, and he requested an extension of time to prepare a challenge to the rating decision. He stated that after heart surgery he "continued to experience chest pain" and was "placed on medication" that, "along with the chronic fatigue, . . . impaired [his] ability to function." R. at 3692. The RO informed Mr. Ferko that his NOD was untimely because the period for appealing the November 2, 2004, rating decision expired on November 2, 2005.

The veteran, in turn, disagreed with the RO's timeliness determination. *See* 38 C.F.R. § 19.34 (2004) ("Whether a Notice of Disagreement . . . has been filed on time is an appealable issue."). In January 2006, he sent correspondence to VA reiterating that his emergency surgery, ongoing disease process, and prescribed medications "impaired [his] ability to function" and "prevented [him] from filing" the NOD before November 2, 2005. R. at 3675. These circumstances, he argued, constituted "good cause" for accepting his NOD submitted slightly after the one-year deadline expired. R. at 3674.

For reasons that aren't clear from the record, this matter lingered unadjudicated for many years before, as best the Court can tell, the Board noticed its continued pendency while considering a later claim related to Mr. Ferko's heart disability. In addition to reopening the heart disability claim, in May 2017 the Board remanded the issue of the timeliness of the November 2005 NOD. (Needless to say, the Court is troubled by VA's decade-long delay in acting on this matter.) VA nevertheless continued to deem the November 2005 NOD untimely.

In the June 2020 decision on appeal, the Board issued a self-contradictory decision. It found that Mr. Ferko did not file a timely NOD challenging the November 2004 rating decision and—preliminarily, at least—that this untimeliness was dispositive. Although recognizing that it could implicitly or explicitly waive the timeliness of a Substantive Appeal, the Board deemed an untimely NOD to be "a jurisdictional bar to appellate consideration," which "may not be waived."[5]

---

[5] A Substantive Appeal is a document used in the legacy system for perfecting an appeal to the Board after VA has issued a Statement of the Case in response to an NOD. 38 C.F.R. § 19.22 (2023). The Substantive Appeal has been removed from the modernized system established by the AMA. *Mattox v. McDonough*, 34 Vet.App. 61, 69–70 (2021), *aff'd*, 56 F.4th 1369 (Fed. Cir. 2023).

3

R. at 6 (citing *Percy v. Shinseki*, 23 Vet.App. 37, 41 (2009)). That is, the Board concluded that it "is without authority to grant an appeal on an equitable basis." *Id.* In the Board's view, the analysis was straightforward: Mr. Ferko's failure to file an NOD by the one-year appeal deadline of section 7105(b) rendered his NOD untimely, and the NOD's untimeliness "deprives the Board of jurisdiction to consider the merits of an appeal." R. at 9. Yet the Board went on to address Mr. Ferko's argument for a deadline extension based on good cause and rejected it on the merits. It concluded that the veteran "had ample time both before and after his surgery to file a timely [NOD], but he did not do so." *Id.* Then, recognizing that this Court has permitted tolling of appeal deadlines due to health problems, the Board found that Mr. Ferko hadn't shown he "was incapacitated for the entire period following November 5, 2004." *Id.* And to the extent that incapacitation for the entire period is not required, the Board determined that the veteran hadn't "articulated what about his heart surgery and convalescence period created a level of incapacitation such that a timely [NOD] could not be filed." *Id.* Section 3.109(b) was never mentioned. This appeal followed.

## II. ANALYSIS

An NOD plays a critical role in VA's adjudicatory scheme. It has long been the instrument by which a claimant "aggrieved by the initial determination" of an Agency adjudicator "would announce the intention to administratively appeal that initial determination," thereby initiating the process for seeking review by the Board. *Hamilton v. Brown*, 39 F.3d 1574, 1575 (Fed. Cir. 1994). As clarified through supplemental briefing, Mr. Ferko challenges the Board's determination as to the timeliness of his NOD, contending that the Board erred in ruling that section 7105(b)'s one-year appeal period is jurisdictional, and in not equitably tolling the deadline for filing his NOD. The Secretary, in turn, argues that the Board was correct to treat section 7105 as jurisdictional and thus not amenable to equitable tolling. And even if the statutory deadline is not jurisdictional, he continues, the judicial doctrine of equitable tolling is inappropriate in this context.

As we explain, although the one-year appeal period in section 7105(b) is mandatory, it does not place a jurisdictional limitation on the Board. Rather, the Board may accept an NOD filed after the NOD deadline when a claimant establishes that there is good cause for doing so. Although the parties focus on whether the equitable tolling doctrine applies in the NOD context, it would be imprudent to resolve that judge-made doctrine's applicability when substantive VA law provides a mechanism for seeking the acceptance of an untimely NOD—§ 3.109(b). Therefore, we shall

4

remand for the Board to apply the provisions of § 3.109(b) free from the misapprehension that an NOD's untimeliness creates a jurisdictional barrier to the Board's exercise of appellate authority.[6]

A.

We begin by addressing whether the one-year appellate period set out by section 7105(b) is jurisdictional in nature such that VA cannot consider untimely NODs under any circumstance. This appeal thus turns on a question of statutory interpretation. "Statutory interpretation is a legal question, and the Court reviews the Board's determinations on legal questions de novo." *Van Dermark v. McDonough*, 34 Vet.App. 204, 210 (2021), *aff'd*, 57 F.4th 1374 (Fed. Cir. 2023).

Jurisdiction is fundamentally about subject matter and so a rule is deemed jurisdictional when it delimits "the classes of cases a court may entertain." *Fort Bend Cnty. v. Davis*, 139 S. Ct. 1843, 1848 (2019). This contrasts with a nonjurisdictional claim-processing rule, which seeks "'to promote the orderly progress of litigation by requiring that parties take certain procedural steps at certain specified times.'" *Id.* at 1849 (quoting *Henderson v. Shinseki*, 562 U.S. 428, 435 (2011)). Any doubt as to the nature of the rule strongly suggests a claim-processing rule, as courts should "treat a procedural requirement as jurisdictional only if Congress clearly states that it is." *Boechler, P.C. v. Comm'r*, 596 U.S. 199, 203 (2022) (quotation marks omitted). Thus, a limitations period will be considered jurisdictional only where the traditional tools of statutory construction "plainly show" that Congress intended the time limit to be jurisdictional in nature. *United States v. Kwai Fun Wong*, 575 U.S. 402, 410 (2015); *accord Wilkins v. United States*, 143 S. Ct. 870, 876 (2023).

Review of the version of section 7105(b) operative in November 2005 does not plainly show that Congress intended the one-year deadline to be jurisdictional in nature. As relevant here, section 7105(b) stated: "Except in the case of simultaneously contested claims, [a] notice of disagreement shall be filed within one year from the date of mailing of notice of the result of initial review or determination." 38 U.S.C. § 7105(b)(1). There is no clear statement in this language that the time for filing an NOD is jurisdictional. Although subsection (b) employs the term "shall,"

---

[6] This is the extent of the matters considered in this appeal. We decline under the doctrine of issue exhaustion to consider Mr. Ferko's argument regarding the presumption of regularity, notice, and the mailing of the November 2004 rating decision because he had the opportunity to raise the arguments before the Board through present counsel but did not. *See Scott v. McDonald*, 789 F.3d 1375, 1377 (Fed. Cir. 2015); *Watkins v. McDonough*, 35 Vet.App. 256, 263 & n.38 (2022). (And even if we were to consider the argument, we would find it underdeveloped.) We also do not consider the question of entitlement to a total disability rating based on individual unemployability because the Board's remand of that matter means it is not presently before us in this appeal. *See Clark v. McDonough*, 35 Vet.App. 317, 323–24 (2022).

mandatory language does not by itself carry jurisdictional significance. *See Henderson*, 562 U.S. at 439. The provision simply specifies a filing deadline for NODs. The Supreme Court has "repeatedly held that filing deadlines ordinarily are not jurisdictional"; rather it has "described them as 'quintessential claim-processing rules.'" *Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 154 (2013) (quoting *Henderson*, 562 U.S. at 435); *see also Boechler*, 596 U.S. at 205 ("Where multiple plausible interpretations exist—only one of which is jurisdictional—it is difficult to make the case that the jurisdictional reading is clear.").

Moreover, subsection (b)'s mandatory language is promptly caveated in subsection (c), which establishes: "If no notice of disagreement is filed in accordance with this chapter within the prescribed period, the action or determination shall become final and the claim will not thereafter be reopened or allowed, *except . . . (3) as may otherwise be provided by regulations not inconsistent with this title*." 38 U.S.C. § 7105(c) (emphasis added). The delegation of authority to the Secretary to promulgate regulations allowing consideration of claims beyond the "prescribed period" further undermines the possibility that Congress intended the limitations period to be jurisdictional in nature. If section 7105(b)'s one-year deadline were jurisdictional, no VA regulation could authorize exceptions to it. *See Auburn Reg'l*, 568 U.S. at 154. But that would render Congress's grant of rulemaking authority to the Secretary in section 7105(c) nonsensical.

The Board cited *Percy* for the proposition that the NOD filing deadline in section 7105(b) is jurisdictional, but it overreads that opinion. *Percy* held that the deadline for filing a Substantive Appeal in then-section 7105(d)(3)—60 days after issuance of a Statement of the Case—was not a limitation on the Board's subject matter jurisdiction and, hence, was waivable by the Agency. 23 Vet.App. at 38. In reaching this conclusion, we compared the "permissive" language of section 7105(d)(3) with the "mandatory" language of section 7105(b) regarding the deadline for filing an NOD. *Id.* at 44. "That Congress chose to use permissive language in section 7105(d)(3) rather than the mandatory language it applied to the NOD requirement," we reasoned, "clearly demonstrates that Congress did not intend an untimely Substantive Appeal to foreclose the Board's exercise of jurisdiction over a matter." *Id. Percy* did not explicitly state that the NOD deadline is jurisdictional, though it's possible to see how such an inference could arise when the language just quoted is considered in isolation.

But judicial language shouldn't be considered in isolation. *See Mitchell v. Shinseki*, 25 Vet.App. 32, 40–41 (2011). *Percy* itself recognized not only the difference between

6

jurisdictional rules and claim-processing rules but also the fact that the word "'jurisdiction'" had been used too profligately in legal parlance without due regard for its connotations. 23 Vet.App. at 45 (quoting *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 510 (2006)). Taken as a whole, the decision itself carried an implicit warning against overreading it. Moreover, *Percy* was decided two years before the Supreme Court decided *Henderson* and clearly "rejected the notion that all mandatory prescriptions, however emphatic, are properly typed jurisdictional." 562 U.S. at 439 (cleaned up). *Henderson* stressed that "'[r]igid jurisdictional treatment'" of a filing deadline would be especially out of place in the context of the "flexible, proclaimant veterans benefits scheme" designed by Congress. *Sneed v. Shinseki*, 737 F.3d 719, 725-26 (Fed. Cir. 2013) (quoting *Henderson*, 562 U.S. at 441). Thus, *Percy* cannot be read—if it ever properly could—as authority for the proposition that the deadline for filing an NOD is a jurisdictional limitation on the Board's appellate authority. To the extent that any of our prior cases have held that the deadline for filing an NOD is jurisdictional, they are overruled.[7]

We therefore hold in this legacy case that the one-year deadline in section 7105(b) for filing an NOD is not jurisdictional and that the Board is not categorically precluded from considering matters contained in an NOD received outside that timeframe. Anything in the Court's caselaw suggesting the contrary should be disregarded.

B.

The Board thus erred in ruling that it lacked jurisdiction to consider the merits of Mr. Ferko's appeal because his NOD was not filed within section 7105(b)'s one-year period. This doesn't mean, however, that the one-year deadline is irrelevant. It is an "important and mandatory" component of section 7105(b)'s claim-processing rule. *Henderson*, 562 U.S. at 435. Such a claim-processing rule would be subject to waiver or forfeiture, but if the "mandatory claim-processing rule" is properly invoked, it "must be enforced." *Hamer v. Neighborhood Hous. Servs.*, 583 U.S. 17, 20 (2017). Hence, VA need not accept an NOD filed outside that one-year period unless a claimant establishes an adequate excuse for the NOD's untimeliness.

Mr. Ferko argues that the framework under which VA should analyze whether to accept his untimely NOD is the equitable tolling doctrine. Appellant's Br. at 4–8. Equitable tolling does

---

[7] The Secretary cites two Federal Circuit decisions wherein, he contends, that court recognized the NOD filing deadline in section 7105(b) as jurisdictional in nature: *Jackson v. Principi*, 265 F.3d 1366 (Fed. Cir. 2001), and *Barnett v. Brown*, 83 F.3d 1380 (Fed. Cir. 1996). But neither case even cites section 7105(b), much less addresses the NOD filing deadline. These cases say nothing to suggest that the deadline is jurisdictional.

7

not emanate from statute or regulation; it is a "judicial doctrine" that is "typically applied by courts" to deadlines affecting their own authority to hear cases and "effectively extends an otherwise discrete limitations period set by Congress." *Arellano v. McDonough*, 143 S. Ct. 543, 547, 548 n.1 (2023) (quotation marks omitted); *see Morgan v. Principi*, 327 F.3d 1357, 1363 (Fed. Cir. 2003) (acknowledging equitable tolling as a "judge-made" doctrine). We have held that equitable tolling applies to the 120-day period for appealing from the Board to this Court. *Bove v. Shinseki*, 25 Vet.App. 136, 140 (2011), *overruled on other grounds by Dixon v. McDonald*, 815 F.3d 799 (Fed. Cir. 2016). "To establish equitable tolling, the appellant must demonstrate (1) an extraordinary circumstance, (2) due diligence in attempting to file, and (3) a connection between the extraordinary circumstance and the failure to timely file." *Roseberry v. McDonough*, 37 Vet.App. 17, 21 (2023).

But we need not take up Mr. Ferko's argument that the Board should have equitably tolled section 7105(b)'s one-year NOD deadline in response to his request for an extension, because there already exists a VA rule that governs these circumstances. Section 3.109(b) permits extensions to VA's internal deadlines and has remained unchanged through all periods relevant to this appeal. It provides:

> Extension of time limit. Time limits within which claimants or beneficiaries are required to act to perfect a claim or challenge an adverse VA decision may be extended for good cause shown. Where an extension is requested after expiration of a time limit, the action required of the claimant or beneficiary must be taken concurrent with or prior to the filing of a request for extension of the time limit, and good cause must be shown as to why the required action could not have been taken during the original time period and could not have been taken sooner than it was. Denials of time limit extensions are separately appealable issues.

38 C.F.R. § 3.109(b) (2023).

We recognized long ago that this regulation allows for extensions to the one-year period for filing an NOD. In *Rowell v. Principi*, 4 Vet.App. 9, 15 (1993), we explained that "the time for filing an NOD may be extended, or an NOD may be accepted if filed out of time, only when, as required by § 3.109(b), such an extension, or acceptance of an untimely NOD, has been requested and good cause for it has been shown."[8] Almost a decade later, in *Morgan v. Principi*, 16 Vet.App. 20, 25 (2002), *aff'd*, 327 F.3d 1357 (Fed. Cir. 2003), we reiterated that "the Secretary has provided

---

[8] Because it is unnecessary in this case to reach the question whether equitable tolling might apply to the one-year period to file an NOD, we leave for another day whether *Rowell* could be read as limiting extensions *only* for good cause.

in § 3.109(b) for the granting of such an exception to the one-year NOD filing period by way of a time extension 'for good cause shown.'" *See Knowles v. Shinseki*, 571 F.3d 1167, 1170 (Fed. Cir. 2009) (observing that § 3.109(b) "allows for an extension of the one-year time limit within which to challenge an adverse RO decision, even after the time limit has expired, if 'good cause' is shown"). Indeed, Mr. Ferko's explicit invocation of the "good cause" standard when requesting an extension of the NOD deadline should have directed VA's attention to § 3.109(b)—though, to be clear, we do not suggest that claimants must use magic words when seeking the extension of an Agency time limit.

The existence of a regulation permitting VA to accept an untimely NOD on the basis of good cause counsels against requiring the Board to first consider whether equitable tolling applies to the situation. In *Auburn Regional*, 568 U.S. at 158, the Supreme Court expressed extreme reluctance to apply equitable tolling "to an agency's internal appeal deadline" when doing so would clash with the standards and timeframes for extension requests set forth in an agency regulation. *Id.* at 157–59; *see id.* at 158 (noting that it had "never applied" the presumption of equitable tolling's availability "to an agency's internal appeal deadline"). Unless the agency's regulation is "arbitrary, capricious, or manifestly contrary to the statute," the Justices unanimously concluded, "a court lacks authority to undermine the regime established by the [agency]." *Id.* at 157 (cleaned up). Indeed, citing *Auburn Regional*, the Federal Circuit declined to "address the question of whether the doctrine of equitable tolling would apply" in a case where "good cause for . . . delay under the applicable regulations" governing administrative appeals had been established. *Kerr v. Merit Sys. Prot. Bd.*, 908 F.3d 1307, 1314 n.4 (Fed. Cir. 2018). And here, the Secretary concedes that the good cause standard under § 3.109(b) is "not as stringent" as the extraordinary circumstance standard under equitable tolling. Oral Argument at 1:01:40–1:02:22, *available at* https://www.youtube.com/watch?v=LDjqqH0rYc8; *see Coley v. Wilkie*, 32 Vet.App. 284, 289 (2020) (observing that "a 'good cause' standard is easier to satisfy than one based on 'extraordinary circumstances'"). Thus, it would be premature to grapple with equitable tolling before the established framework under § 3.109(b) for VA deadline extensions has been properly considered.

The fact that the parties have not engaged with § 3.109(b) does not prevent us from taking cognizance of it. "[W]hen an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law." *U.S. Nat'l Bank of Or. v. Indep. Ins.*

*Agents of Am., Inc.*, 508 U.S. 439, 446 (1993) (quotation marks and citation omitted). So, "a court may consider an issue 'antecedent to . . . and ultimately dispositive of' the dispute before it, even an issue the parties fail to identify and brief." *Id.* at 447 (alteration in original) (quoting *Arcadia v. Ohio Power Co.*, 498 U.S. 73, 77 (1990)). Were that not so, mere indifference or oversight by the parties could lead a court to opine needlessly—and perhaps improperly—on a question of law. *See id.*

Here, the parties dispute whether the one-year NOD deadline in section 7105(b) is jurisdictional and, if not, whether a late-filed NOD may nevertheless be accepted despite its untimeliness. Section 3.109(b) sets forth a well-established regulatory standard for seeking acceptance of an untimely NOD, a standard that is properly considered before reaching the applicability of equitable tolling. In fact, the Supreme Court has recently reserved judgment on the argument that equitable tolling "is not presumptively available to agencies because they possess no equitable power unless Congress grants it to them." *Arellano*, 143 S. Ct. at 548 n.1. In these circumstances, it would be unwise to task the Board with applying the equitable tolling doctrine to a novel administrative context. Simply put, "the refusal to consider arguments not raised is a sound prudential practice, rather than a statutory or constitutional mandate, and there are times when prudence dictates the contrary," *Davis v. United States*, 512 U.S. 452, 464 (1994) (Scalia, J., concurring); this is one of those times.

On remand, the Board must determine whether Mr. Ferko has shown good cause for, and otherwise demonstrated entitlement to, an extension of the NOD-filing deadline under § 3.109(b). Moreover, we note that it is not clear from the present decision whether the Board fully considered all of the veteran's assertions for why he could not timely file an NOD: not only his cardiac surgery but also postsurgical complications, chronic fatigue, and the effects of medication that impaired his ability to function. When the Board readjudicates this case, it should ensure that its decision reflects due consideration of this materially favorable evidence. *See Calhoun v. McDonough*, 37 Vet.App. 96, 108 (2024).

### III. CONCLUSION

The Court VACATES the June 12, 2020, Board decision and REMANDS the matter for further proceedings consistent with this opinion. The appeal of the Board Chairman's March 4, 2021, denial of reconsideration is DISMISSED.

10

FALVEY, *Judge*, with whom PIETSCH, ALLEN, TOTH, and JAQUITH, *Judges*, join, concurring: I fully agree with the majority opinion. "[T]he cardinal principle of judicial restraint— if it is not necessary to decide more, it is necessary not to decide more—counsels us to go no further." *PDK Lab'ys Inc. v. DEA*, 362 F.3d 786, 799 (D.C. Cir. 2004) (Roberts, J., concurring in part and concurring in the judgment). And here, once we dealt with the Board's jurisdictional mistake, we don't need to reach the question of tolling; the Board's failure to correctly apply § 3.109(b) is enough reason to send this case back.

That said, I write separately to address why we're remanding this case for the Board to consider whether open heart surgery constitutes good cause rather than answering what seems like an easy question ourselves and reversing for the Board to accept Mr. Ferko's appeal as timely.

Across a series of decisions, the Federal Circuit has admonished this Court for resolving questions of fact that it deemed "open to debate." *See, e.g.*, *Tadlock v. McDonough*, 5 F.4th 1327, 1336 (Fed. Cir. 2021)*.* We can neither find facts in the first instance nor weigh the evidence in the first instance. *Stinson v. McDonough,* 92 F.4th 1355, 1360-36 (Fed. Cir. 2024) (*citing Deloach v. Shinseki*, 704 F.3d 1370, 1380 (Fed. Cir. 2013)). The holdings of these cases control the result here. The evidence makes a viable case for reversal: Mr. Ferko submitted treatment notes attesting to his open-heart surgery and convalescence that seem sufficient to excuse a 12-day delay in filing his NOD. R. at 1271-73; 3592-95; 3692-93. Let's face it, if open-heart surgery is not good cause, it's hard to imagine what is. That said, the Board looked at the case through the lens of equitable tolling. R. at 9. It did not grapple with this question as it is framed by the requirements of the regulation. *See* 38 C.F.R. § 3.109(b) (requiring the claimant to show good cause "as to why the required action could not have been taken during the original time period and could not have been taken sooner than it was"). *Stinson* and *Tadlock* counsel that it would be impermissible factfinding for this Court to conclude that Mr. Ferko met the good cause requirement of § 3.109(b). Therefore, mindful of limiting precedent, this case returns to the Board for it to consider the matter of good cause under § 3.109(b).

JAQUITH, *Judge*, concurring: I fully agree with both the majority opinion and the concurrence authored by Judge Falvey. I write separately only to note that I do not read *Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145 (2013), as foreclosing equitable tolling of section 7105(b)(1) because the Supreme Court explicitly contrasted the statutory scheme at issue in that

11

case from one that is like the "strongly and uniquely pro-claimant"[9] veterans benefits system. *Auburn Reg'l*, 568 U.S. at 159-60, 163. But § 3.109(b) must be properly addressed before considering tolling, and § 3.109(b) should govern here.


SCHOELEN, *Senior Judge*, with whom BARTLEY, *Chief Judge*, and GREENBERG and LAURER, *Judges*, join, concurring: We concur in the majority's decision to remand the appeal to the Board to redecide the case, but dissent as to the reasoning.[10] Principally, we disagree with the majority's choice to rest the decision on the application of a good cause extension of the NOD filing deadline under § 3.109 because Mr. Ferko did not make that argument in his appeal and, in fact, disclaimed it at oral argument. We would instead address the argument that the veteran did make, holding that equitable tolling is available for untimely legacy NODs and that the stop-clock approach could apply to his appeal.

Before the Board, Mr. Ferko argued for the "good cause" exception to apply, but he does not do so before this Court even though the same attorney represented him at both stages of his litigation. Mr. Ferko's opening brief does not reference the "good cause" regulatory standard, § 3.109, or section 7105(c)'s explicit grant of authority allowing the Secretary to issue regulatory exceptions to the NOD requirement. And during oral argument, Mr. Ferko asserted that he was not asking for a remand based on the good cause regulation because he believed remand on that basis would not afford him the whole of the relief that he was seeking. *See* Oral Argument at 27:45-29:10, *available at* https://www.youtube.com/watch?v=LDjqqH0rYc8; *see also Robinson v. Peake,* 21 Vet.App. 545, 554 (2008) ("We presume that [Mr. Robinson's] attorney . . . , an experienced attorney in veteran's law, says what he means and means what he says."), *aff'd sub nom. Robinson v. Shinseki*, 557 F.3d 1355 (Fed. Cir. 2009). Specifically, he explains that, to toll the NOD filing period under the stop-clock approach to equitable tolling, he would only need to show due diligence during the extraordinary circumstance period, Appellant's Brief at 9-10 (citing *Checo v. Shinseki*, 748 F.3d 1373, 1380 (Fed. Cir. 2014)), whereas the Board, in addressing entitlement to a good-cause extension (albeit without citing § 3.109(b)), appears to have required

---

[9] *Hodge v. West*, 155 F.3d 1356, 1362 (Fed. Cir. 1998); *see Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 440–41 (2011).

[10] We agree with the majority's decision that the deadline to file an NOD in a legacy claim is not jurisdictional.

12

a showing of due diligence throughout the entire appeal period, R. at 9 (faulting the veteran for failing to file an NOD in the four months before and seven months after his surgery).

The majority downplays these facts and the veteran's concern, opting instead to reframe his arguments in the name of judicial restraint. *See ante* at 10. But sidestepping the veteran's explicit argument with an eye towards efficiency is imprudent in this case, and likely unsatisfying for Mr. Ferko, because it leaves the heart of his dispute unresolved and uncertain.

When a litigant explicitly abandons an argument and explains why relief on that basis will not suffice, it's injudicious for the Court to override the litigant's explicit choice and dispose of the case—over the litigant's objection—on the basis that has been disclaimed. Forging ahead in that circumstance puts the Court in an inappropriate paternalistic position, and says to the litigant that, even though it's the litigant's case, the Court knows better. *See Mason v. Shinseki*, 25 Vet.App. 83, 94, 95 (2011) (holding that the Court should only exercise its discretion to address arguments not raised by the parties in "rare instances" because doing so "essentially wrests control of the litigation away from the parties, who, for any number of reasons, may have chosen not to advance such arguments to the Court"). This is particularly true here because, unlike in *U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc*., 508 U.S. 439, 447 (1993), addressing the unargued issue is not antecedent to or necessary to the disposition of this case. It's just the simpler path. *See Mason*, 25 Vet.App. at 94 (distinguishing *U.S. Nat'l Bank of Or.* and *Arcadia v. Ohio Power Co.,* 498 U.S. 73, 77 (1990), on the ground that addressing the effect of the filing of a motion for reconsideration at the Board was not "antecedent to . . . and ultimately dispositive of the dispute before the Court that must be decided to avoid committing a legal error") (internal quotations and citations omitted). But because Mr. Ferko disclaimed a remand predicated solely on § 3.109, we believe that the Court should address the question that he actually argued: Whether the NOD deadline can be equitably tolled. And the answer to that question is a resounding "yes."

Equitable tolling "effectively extends an otherwise discrete limitations period set by Congress" when a litigant diligently pursues his or her rights, but extraordinary circumstances prevent that litigant from bringing a timely action. *Lozano v. Montoya Alvarez*, 572 U.S. 1, 10 (2014). The presumption in favor of equitable tolling is rebutted if tolling contradicts the statutory scheme. *See Arellano v. Shinseki,* 598 U.S. 1, 9 (2023).

Nothing in the statutory language or scheme in this case suggests that equitable tolling should not be available. Section 7105(c) does not expressly prohibit equitable tolling and contains

only one explicit statutory exception to the default rule of the one-year deadline for filing NODs–"except as may otherwise be provided by regulations . . . ." The statute is simply stated, contains no detailed or technical language, is not emphatic or reiterative, and does not limit the amount of recovery due, factors that favor the availability of equitable tolling. *Compare United States v. Brockamp,* 519 U. S. 347 (1997), *with Boechler P.C. v. Comm'r*, 596 U.S. 199, 210 (2022); *see also Arellano*, 598 U.S. at 12, 20.

To cast doubt on whether section 7105(b)(1) may be equitably tolled, the majority draws on *Sebelius v. Auburn Regional Medical Center*, noting the Supreme Court's "reluctance to apply equitable tolling 'to an agency's internal appeal deadline' when doing so would clash with the standards and timeframes for extension requests set forth in the agency regulation." *Ante* at 9 (quoting *Auburn Reg'l*, 568 U.S. 145, 158 (2013)). But *Auburn Regional* turned on the Supreme Court's finding that equitably tolling the statutory deadline in that case would "essentially gut" the regulation that specifically and explicitly limited the window for late filings. 568 U.S. at 157. In contrast, the § 3.109 good cause extension does not bar NODs that are filed after a specific amount of time has passed. And although the Supreme Court in *Auburn Regional* stated that it had never applied equitable tolling to an internal agency deadline, other federal appellate courts have since allowed equitable tolling of such deadlines. *See*, *e.g.*, *Avila-Santoyo v. U.S. Atty. Gen.*, 713 F.3d 1357 (11th Cir. 2013) (per curiam) (applying equitable tolling to the statutory deadline for filing a motion to reopen a Board of Immigration Appeals decision made by an Immigration Law Judge under 8 U.S.C. § 1229a(c)(7)(C)(i)).[11]

Additionally, the VA benefits statutory scheme stands in stark contrast to the one in *Auburn Regional*, where the Supreme Court noted that Congress's intent for equitable tolling should not apply where "the statutory scheme before us is not designed to be 'unusually protective' of claimants[,]'" nor where "'laymen, unassisted by trained lawyers, initiate the process.'" 568 U.S. at 160 (first quoting *Bowen v. City of New York*, 476 U.S. 467, 480 (1986), then quoting *Zipes v. Trans World Airlines, Inc*, 455 U.S. 485, 397 (1982). The VA benefits scheme, on the other hand, is uniquely pro-claimant and designed to protect veterans, many of whom pursue their claims pro se in a very complex, often byzantine system. *See, e.g.*, *Henderson,* 562 U.S. at 441; *Holland v.*

---

[11] Further, the Federal Circuit did not dismiss equitable tolling as unavailable in *Kerr v. Merit Sys. Prot. Bd.*, 908 F.3d 1307, 1314 n.4 (Fed. Cir. 2018) (declining to address whether equitable tolling would apply "[be]cause we hold that Kerr established good cause for her delay under the applicable regulations") (citing *Auburn Reg'l*, 568 U.S. at 145).

14

*Florida*, 560 U.S. 631, 647-48 (2010). As Justice Sotomayor noted in her concurring opinion in *Auburn Regional*, "with respect to remedial statutes designed to protect the rights of unsophisticated claimants, . . . agencies (and reviewing courts) may best honor congressional intent by presuming that statutory deadlines for administrative appeals are subject to equitable tolling, just as courts presume comparable judicial deadlines under such statutes may be tolled." 568 U.S. at 163. Indeed, it would be particularly incongruent to allow for equitable tolling of 38 U.S.C. § 7266's judicial appeal period—i.e., at the commencement of the adversarial stage of an appeal— and not of section 7105(b)(1)—i.e., at the commencement of the nonadversarial stage of an appeal. *See id*.

Moreover, the law surrounding equitable tolling of VA internal deadlines embraces tolling. This Court has already extended the availability of equitable tolling to the internal VA deadline for filing Substantive Appeals (SA), *see Hunt v. Nicholson*, 20 Vet.App. 519, 522 (2006); *Percy v. Shinseki,* 23 Vet.App. 37, 45 (2009),[12] and the Federal Circuit has emphasized that "equitable tolling . . . should be interpreted liberally with respect to filings during the *nonadversarial* stage of the veterans' benefits process," *Jaquay v. Principi*, 304 F.3d 1276, 286 (Fed. Cir. 2002) (en banc) (emphasis added). Allowing for equitable tolling of the NOD deadline will also not significantly complicate the administrative adjudicatory process, as both equitable tolling and the "good cause" exception already apply to the time limit for filing an SA, *see Percy*, 23 Vet.App. at 44-45; *Hunt*, 20 Vet.App. at 522, and the Secretary has not challenged that scheme in the 17 years since *Hunt* first allowed for equitable tolling of that deadline. Moreover, VA has not asserted here that conducting both the good cause and equitable tolling analyses for the SA deadline has led to significant complications or administrative delays. Instead, what VA's experience teaches us is that good cause and equitable tolling can coexist. And the Court's practice of allowing appellants to seek a good cause extension or equitable tolling of the statutory timeline to appeal to the Court, depending on the length of the delay, further reinforces that such extensions can be complementary and independently have value. *See* U.S. VET. APP. R. 4(a)(3)(B).

Thus, we would hold that, consistent with the statutory scheme and Congressional intent, the NOD filing deadline can be equitably tolled. As applied to Mr. Ferko, that would mean that, if

---

[12] Although the majority holds that any case that claims that an NOD is jurisdictional should be disregarded, confusingly, it later declares that it is leaving for another day whether *Rowell v. Principi* still limits extensions of time for NODs to good cause. These statements conflict because *Rowell* treated the NOD deadline as jurisdictional, and the Court has now rejected that premise. 4 Vet.App. 9, 15 (1993).

he were to establish that his cardiac surgery and related treatment constituted an exceptional circumstance, he could benefit from the stop-clock tolling approach adopted by the Federal Circuit in *Checo*, 748 at 1379-80. Accordingly, we would remand Mr. Ferko's claim for the Board to consider the application of equitable tolling and the stop-clock approach in the first instance.