## *PRELIMINARY PRINT*

## VOLUME 598 U. S. PART 1

### PAGES 1–14

# OFFICIAL REPORTS

OF

# THE SUPREME COURT

JANUARY 23, 2023

Page Proof Pending Publication

REBECCA A. WOMELDORF

REPORTER OF DECISIONS



NOTICE: This preliminary print is subject to formal revision before the bound volume is published.   Users are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D.C. 20543, pio@supremecourt.gov, of any typographical or other formal errors.

# CASES ADJUDGED

IN THE

# SUPREME COURT OF THE UNITED STATES

AT

## OCTOBER TERM, 2022

---

## ARELLANO *v.* McDONOUGH, SECRETARY OF VETERANS AFFAIRS

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

No. 21–432.   Argued October 4, 2022—Decided January 23, 2023

This case concerns the effective date of an award of disability compensation to a veteran of the United States military.   Approximately 30 years after Adolfo Arellano's honorable discharge from the Navy, Arellano applied to the Department of Veterans Affairs (VA) for disability compensation based on his psychiatric disorders.   A VA regional office granted Arellano service-connected disability benefits after finding that his disorders resulted from trauma that he suffered while serving on an aircraft carrier.   Applying the default rule in 38 U. S. C. § 5110(a)(1), the VA assigned an effective date of June 3, 2011—the day that the agency received his claim—to Arellano's disability award.   Arellano appealed, arguing that his award's effective date should be governed by an exception in § 5110(b)(1), which makes "[t]he effective date of an award of disability compensation . . . the day following the date of the veteran's discharge or release if application therefor is received within one year from such date of discharge or release."   Alleging that he had been too ill to know that he could apply for disability benefits, Arellano maintained that this exception's 1-year grace period should be equitably tolled to make his award effective on or about the day after his discharge from military service in 1981.   The VA's Board of Veterans' Appeals denied Arellano's request, and the Court of Appeals

1

for Veterans Claims affirmed. The Federal Circuit affirmed the
judgment.

*Held*: Section 5110(b)(1) is not subject to equitable tolling.    Pp. 6–14.

(a) Equitable tolling "effectively extends an otherwise discrete limita-
tions period set by Congress" when a litigant diligently pursues his
rights but extraordinary circumstances prevent him from bringing a
timely action.    *Lozano* v. *Montoya Alvarez*, 572 U. S. 1, 10.    The Court
presumes that federal statutes of limitations are subject to equitable
tolling.    See *Irwin* v. *Department of Veterans Affairs*, 498 U. S. 89, 95–
96.    But this presumption is rebutted if equitable tolling is inconsistent
with the statutory scheme.    Here, the Secretary of the VA argues that
§ 5110(b)(1) is not a statute of limitations and that, even if it were, any
applicable presumption in favor of equitable tolling is rebutted by the
statutory text and structure.    The Court need not decide whether
§ 5110(b)(1) is a statute of limitations.    Even assuming that the excep-
tion sets a limitations period, there exists "good reason to believe that
Congress did *not* want the equitable tolling doctrine to apply."    *United
States* v. *Brockamp*, 519 U. S. 347, 350.

Section 5110(b)(1) operates as a limited exception to § 5110(a)(1)'s de-
fault rule, which states that "the effective date of an award . . . shall be
fixed in accordance with the facts found, but shall not be earlier than
the date of receipt of application therefor."    The default rule applies
"[u]nless specifically provided otherwise in this chapter"—a clause indi-
cating that Congress enumerated an exhaustive list of exceptions, with
each confined to its specific terms.    According to the terms of the excep-
tion in § 5110(b)(1), "[t]he effective date of an award of disability compen-
sation to a veteran shall be the day following the date of the veteran's
discharge or release if application therefor is received within one year
from such date of discharge or release."    Equitably tolling this provi-
sion would depart from the terms that Congress "specifically pro-
vided."    § 5110(a)(1).

The structure of § 5110—which sets out 16 exceptions that explain
when various types of benefits qualify for an effective date earlier than
the default—reinforces Congress's choice to set effective dates solely as
prescribed in the text.    These exceptions do not operate simply as time
constraints, but also as substantive limitations on the amount of recov-
ery due, a structure strongly indicating that "Congress did not intend
courts to read other unmentioned, open-ended, 'equitable' exceptions
into the statute that it wrote."    *Brockamp*, 519 U. S., at 352.    That
many of the specific exceptions reflect equitable considerations height-
ens the structural inference, as does the fact that Congress generally
capped retroactive benefits at roughly one year.    When, as here, Con-

gress has already considered equitable concerns and limited the relief available, "additional equitable tolling would be unwarranted." *United States* v. *Beggerly,* 524 U. S. 38, 48–49. Although hard and fast limits on retroactive benefits can create harsh results, Congress has the power to choose between rules, which prioritize efficiency and predictability, and standards, which prioritize optimal results in individual cases. Cf. *Brockamp,* 519 U. S., at 352–353. Congress opted for rules in this statutory scheme, and an equitable extension of §5110(b)(1)'s 1-year grace period would disrupt that choice. Pp. 6–12.

(b) Arellano sees §5110(b)(1) as a simple time limit and therefore a classic case for equitable tolling. But §5110(b)(1) cannot be understood independently of §5110(a)(1), which makes the date of claim receipt the effective date "[u]nless specifically provided otherwise in this chapter." This language is an instruction to attend to specifically enacted language to the exclusion of general, unenacted carveouts. Arellano relies on a separate exception in §5110(b)(4)—which makes disability pension benefits retroactive in certain cases where permanent and total disability prevents a veteran from applying for an award at the time of disability onset—to argue that Congress wanted traditional principles of equitable tolling to apply to §5110(b)(1). To the contrary, §5110(b)(4) demonstrates that Congress had on its radar the possibility that disability could delay an application for benefits and still Congress did not explicitly account for that possibility in §5110(b)(1). *Young* v. *United States,* 535 U. S. 43, distinguished. Finally, Arellano contends that the nature of the subject matter—veterans' benefits—counsels in favor of tolling because providing benefits to veterans is a context in which individualized equities are paramount. But the nature of the subject matter cannot overcome statutory text and structure that foreclose equitable tolling. Pp. 12–14.

1 F. 4th 1059, affirmed.

BARRETT, J., delivered the opinion for a unanimous Court.

*James R. Barney* argued the cause for petitioner. With him on the briefs was *Kelly S. Horn.*

*Sopan Joshi* argued the cause for respondent. With him on the brief were *Solicitor General Prelogar, Principal Deputy Assistant Attorney General Boynton,* and *Deputy Solicitor General Stewart.**

―――――

*Briefs of *amici curiae* urging reversal were filed for the Constitutional Accountability Center by *Elizabeth B. Wydra* and *Brianne J. Gorod*; for Disabled American Veterans et al. by *Amy F. Odom, Robert V. Chisholm,*

JUSTICE BARRETT delivered the opinion of the Court.

This case concerns the effective date of an award of disability compensation to a veteran of the United States military. The governing statute provides that the effective date of the award "shall not be earlier" than the day on which the Department of Veterans Affairs (VA) receives the veteran's application for benefits. But the statute specifies 16 exceptions, one of which is relevant here: If the VA receives the application within a year of the veteran's discharge, the effective date is the day after the veteran's discharge. We must decide whether this exception is subject to equitable tolling, a doctrine that would allow some applications filed outside the 1-year period to qualify for the "day after discharge" effective date. We hold that the provision cannot be equitably tolled.

## I

### A

The United States offers benefits to any veteran who suffers a service-connected disability. 38 U. S. C. §§1110, 1131. A veteran seeking these benefits must file a claim with the VA. §5101(a)(1)(A). "A regional office of the VA then determines whether the veteran satisfies all legal prerequisites, including the requirement that military service caused or aggravated the disability." *George* v. *McDonough*, 596 U. S. ——, —— – —— (2022). If the regional office grants the application, it assigns an "effective date" to the award, and payments begin the month after that date. §§5110(a)(1),

---

and *Zachary Stolz*; and for Military-Veterans Advocacy Inc., et al. by *Melanie L. Bostwick, Cesar A. Lopez-Morales, John B. Wells*, and *Harvey Weiner*.

Briefs of *amici curiae* were filed for Edgewood Veterans et al. by *Liam J. Montgomery, Charles L. McCloud, Diane Boyd Rauber, William A. Rivera, Leonard J. Selfon*, and *Linda E. Blauhut*; for the Federal Circuit Bar Association by *Nicholas F. Giove, Jonathan A. Herstoff*, and *Aakruti G. Vakharia*; and for the National Law School Veterans Clinic Consortium by *Angela K. Drake*.

5111(a)(1). If the effective date precedes the date on which the VA received the claim, the veteran receives retroactive benefits.

Section 5110 dictates how this date is calculated. The default rule is that "the effective date of an award . . . shall be fixed in accordance with the facts found, but shall not be earlier than the date of receipt of application therefor." §5110(a)(1). This rule applies "[u]nless specifically provided otherwise in this chapter." *Ibid.* Sixteen exceptions in §5110 "provid[e] otherwise," including one specifying that "[t]he effective date of an award of disability compensation to a veteran shall be the day following the date of the veteran's discharge or release if application therefor is received within one year from such date of discharge or release." §5110(b)(1). On its face, this exception allows up to one year of retroactive benefits. But if the VA can treat an application filed more than one year after discharge as if it had been filed within the statutory window, a veteran could potentially recover decades' worth of retroactive payments.

B

Adolfo Arellano served in the Navy from 1977 until his honorable discharge in 1981. Approximately 30 years later, the VA received Arellano's application for disability compensation based on his psychiatric disorders. A VA regional office found that Arellano's disorders resulted from trauma that he suffered while serving on an aircraft carrier that collided with another ship. So the regional office granted Arellano benefits for his service-connected disabilities—schizoaffective disorder bipolar type with posttraumatic stress disorder. It assigned an effective date of June 3, 2011, the day that the VA received his claim.

Arellano appealed the regional office's decision to the VA's Board of Veterans' Appeals. He acknowledged that he did not submit an application for benefits until June 2011. But he argued that the regional office should have equitably

tolled § 5110(b)(1)'s 1-year timeline to make his award effective as of the day after his discharge from service in 1981 or, at the latest, January 1, 1982. In support of equitable tolling, Arellano alleged that he had been too ill to know that he could apply for service-connected disability benefits. The Board denied Arellano's request for equitable tolling, and the Court of Appeals for Veterans Claims affirmed.

The en banc Federal Circuit affirmed the judgment unanimously but divided equally on the supporting rationale. Half the court, adhering to Circuit precedent, maintained that § 5110(b)(1) is not subject to equitable tolling. 1 F. 4th 1059, 1086 (2021) (Chen, J., concurring in judgment); see *Andrews* v. *Principi*, 351 F. 3d 1134 (2003). The other half, rejecting Circuit precedent, reasoned that § 5110(b)(1) is subject to equitable tolling but that tolling was unwarranted on the facts of Arellano's case. 1 F. 4th, at 1099 (Dyk, J., concurring in judgment).

We granted certiorari to resolve which side had the better interpretation of the statute. 595 U. S. —— (2022).

## II

Equitable tolling "effectively extends an otherwise discrete limitations period set by Congress." *Lozano* v. *Montoya Alvarez*, 572 U. S. 1, 10 (2014). In practice, it "pauses the running of, or 'tolls,' a statute of limitations when a litigant has pursued his rights diligently but some extraordinary circumstance prevents him from bringing a timely action." *Ibid.* The doctrine "is a traditional feature of American jurisprudence and a background principle against which Congress drafts limitations periods." *Boechler* v. *Commissioner*, 596 U. S. ——, —— (2022). Consistent with this jurisprudential backdrop, we presume that federal statutes of limitations are subject to equitable tolling. *Irwin* v. *Department of Veterans Affairs*, 498 U. S. 89, 95–96 (1990). The *Irwin* presumption, however, is just that—a presumption. It can be rebutted, and if equitable tolling is inconsist-

ent with the statutory scheme, courts cannot stop the clock for even the most deserving plaintiff. *John R. Sand & Gravel Co.* v. *United States*, 552 U. S. 130, 137–138 (2008); *United States* v. *Beggerly*, 524 U. S. 38, 48–49 (1998).

The Secretary of Veterans Affairs advances two reasons why § 5110(b)(1) is not subject to equitable tolling. The first would head tolling off at the pass: He argues that § 5110(b)(1) is not a statute of limitations, so the presumption is wholly inapplicable. See *Lozano*, 572 U. S., at 13–14 ("[W]e have only applied" *Irwin*'s presumption "to statutes of limitations"). Rather than extinguishing a tardy claim (the function of a statute of limitations), § 5110(b)(1) caps the award for a successful claim (a different function). Brief for Respondent 18–22. That it does so with reference to the time of filing, the Secretary says, does not convert it into a statute of limitations. *Id.*, at 21. In any event, the Secretary adds, equitable tolling is at odds with the statutory text and structure—so even assuming that § 5110(b)(1) sets a limitations period, the presumption is rebutted.

We need not address the Secretary's first argument because the second is straightforward. The presumption is rebutted if "there [is] good reason to believe that Congress did *not* want the equitable tolling doctrine to apply." *United States* v. *Brockamp*, 519 U. S. 347, 350 (1997). In this case, there is very good reason to draw that conclusion. Section 5110 contains detailed instructions for when a veteran's claim for benefits may enjoy an effective date earlier than the one provided by the default rule. It would be inconsistent with this comprehensive scheme for an adjudicator to extend effective dates still further through the doctrine of equitable tolling.[1]

——————

[1] Equitable tolling, a judicial doctrine, is typically applied by courts. See *Sebelius* v. *Auburn Regional Medical Center*, 568 U. S. 145, 158–159 (2013). In this case, Arellano posits that the VA would apply the doctrine in the first instance. Reply Brief 18–19; Tr. of Oral Arg. 16–17. The Secretary counters that the doctrine is not presumptively available to

A

Start with the text.   Section 5110(b)(1) operates as a limited exception to §5110(a)(1)'s default rule, which states that "the effective date of an award . . . shall be fixed in accordance with the facts found, but shall not be earlier than the date of receipt of application therefor."   The default applies "[u]nless specifically provided otherwise in this chapter"—a clause indicating that Congress enumerated an exhaustive list of exceptions, with each confined to its specific terms. §5110(a)(1).   According to the terms of the exception in §5110(b)(1), "[t]he effective date of an award of disability compensation to a veteran shall be the day following the date of the veteran's discharge or release if application therefor is received within one year from such date of discharge or release."   Equitably tolling this provision would depart from the terms that Congress "specifically provided." §5110(a)(1).

The structure of §5110 reinforces Congress's choice to set effective dates solely as prescribed in the text.   The statute sets out detailed instructions that explain when various types of benefits qualify for an effective date earlier than the default.   There are 16 such exceptions—and equitable tolling is not on the list.   See §§5110(b)(1), (b)(2)(A), (b)(3), (b)(4)(A), (c), (d), (e)(1), (e)(2), (f), (g), (h), (i), (j), (k), (l), (n). Notably, these exceptions do not operate simply as time constraints, but also as substantive limitations on the amount of recovery due.   See, *e. g.*, §5110(g) ("In no event shall [an] award or increase [under this paragraph] be retroactive for more than one year from the date of application therefor or the date of administrative determination of entitlement,

———————

agencies because they possess no equitable power unless Congress grants it to them—which, he says, Congress has not done here.   Brief for Respondent 32–35.   We need not settle this dispute.   Our conclusion that the presumption is rebutted means that no adjudicator, whether an agency or a court, may equitably toll the effective date.

whichever is earlier"). We stated in *Brockamp* that an "explicit listing of exceptions" in a statute containing "detail" and describing "not only procedural limitations, but also substantive limitations on the amount of recovery" strongly indicated that "Congress did not intend courts to read other unmentioned, open-ended, 'equitable' exceptions into the statute that it wrote." 519 U. S., at 352. So too here. If Congress wanted the VA to adjust a claimant's entitlement to retroactive benefits based on unmentioned equitable factors, it is difficult to see why it spelled out a long list of situations in which a claimant is entitled to adjustment— and instructed the VA to stick to the exceptions "specifically provided." § 5110(a)(1).

That many of the specific exceptions reflect equitable considerations heightens the structural inference. Several, including § 5110(b)(1), apply when the event triggering the entitlement to benefits is disability or death—both circumstances in which prompt filing could be challenging for a veteran or her survivors. See §§ 5110(b)(1), (b)(3), (b)(4)(A), (d); cf. *Lozano*, 572 U. S., at 10 (noting that equitable tolling may be appropriate when a person diligently pursues her rights but an "extraordinary circumstance prevents [her] from bringing a timely action"). One permits an earlier effective date for the award of benefits to a veteran's child, a claimant typically dependent on others for prompt filing. § 5110(e)(1). Still others permit retroactive benefits when facts change or new evidence emerges. See § 5110(h) (permitting retroactive benefits when actual income would increase a pension that had been awarded based on anticipated income); § 5110(i) (permitting retroactive benefits when "any disallowed claim is readjudicated and thereafter allowed on the basis of new and relevant evidence resulting from the correction of" certain military records). Yet despite its attention to fairness, Congress did not throw the door wide open in these circumstances or any other. In all but one

instance, Congress capped retroactive benefits at roughly one year.[2]

This pattern matters. That Congress accounted for equitable factors in setting effective dates strongly suggests that it did not expect an adjudicator to add a broader range of equitable factors to the mix. And its decision to consistently cap retroactive benefits strongly suggests that it did not expect open-ended tolling to dramatically increase the size of an award. When Congress has already considered equitable concerns and limited the relief available, "additional equitable tolling would be unwarranted." *Beggerly,* 524 U. S., at 48–49.

Section 5110(b)(4), another disability-related exception to the default rule, illustrates the point. Recall that § 5110(b)(1), the exception at issue here, adjusts the effective date of disability compensation to the day after a veteran's discharge from the military, so long as the VA receives the claim within one year of discharge. Arellano contends that his claim, filed 30 years after discharge, should relate back to the date of discharge because his disability prevented him

---

[2] Thirteen of the exceptions, including § 5110(b)(1), allow an effective date up to one year before the application-receipt date. See, *e. g.,* § 5110(b)(3) ("The effective date of an award of increased compensation shall be the earliest date as of which it is ascertainable that an increase in disability had occurred, *if application is received within one year from such date*" (emphasis added)). Two exceptions contemplate the possibility that the effective date of an award might stretch up to one day short of 13 months before the application-receipt date. See §§ 5110(d) ("The effective date of an award of death compensation, dependency and indemnity compensation, or death pension for which application is received within one year from the date of death shall be the first day of the month in which the death occurred"), (e)(1). The only one offering more than 13 months of retroactive benefits concerns the death of an active-duty servicemember. This provision permits an award of death compensation to be effective as of the month of death, no matter how long ago the death occurred—but still, retroactive benefits are permitted only if the VA receives the application within one year of the military's entry of a report or finding of the servicemember's death. § 5110(j).

from filing earlier than he did. But §5110(b)(4), which applies to disability pensions rather than disability compensation, expressly accounts for this very concern: It makes pension benefits retroactive to the date of permanent and total disability if the disability prevented the veteran from applying for an award at the time of onset. §§5110(b)(4)(A), (B). The possibility that disability could cause delay was therefore on Congress's radar; still, Congress did not explicitly account for it in §5110(b)(1). Moreover, while Arellano posits an open-ended grace period for §5110(b)(1), §5110(b)(4)(A) imposes a restrictive one: It applies only "if the veteran applies for a retroactive award within one year" of "the date on which the veteran became permanently and totally disabled." Why would Congress allow an unlimited grace period for an equitable concern unmentioned in §5110(b)(1) when it established a limited grace period for the same concern explicitly mentioned in §5110(b)(4)? Tolling §5110(b)(1) would single it out for special treatment; enforcing its terms keeps it consistent with the statutory scheme.

The most compelling argument for equitable tolling is that hard and fast limits on retroactive benefits can create harsh results. The statutory default ties the start of benefits to the application-receipt date, a choice that incentivizes promptness and disfavors retroactive awards. The exceptions granting a 1-year grace period soften that choice in specified circumstances, yet there are situations in which equity's flexible, open-ended approach would be more generous to a deserving claimant. With this in mind, Congress could have designed a scheme that allowed adjudicators to maximize fairness in every case. But Congress has the power to choose between rules, which prioritize efficiency and predictability, and standards, which prioritize optimal results in individual cases. Cf. *Brockamp*, 519 U. S., at 352–353 (observing that "Congress decided to pay the price of occasional unfairness in individual cases . . . in order to maintain a more workable tax enforcement system"). Congress opted for

rules in this statutory scheme, and an equitable extension of §5110(b)(1)'s 1-year grace period would disrupt that choice.

B

Arellano contests all of this. Laser focused on §5110(b)(1), he argues that the provision's unadorned text contains none of the specific, technical language that might otherwise rebut the presumption of equitable tolling. In addition, he emphasizes that there are "*zero* express exceptions to §5110(b)(1)'s one-year clock," which he describes as "fatal" to the Secretary's position. Reply Brief 14. As Arellano sees it, §5110(b)(1) is a simple time limit and therefore a classic case for equitable tolling.

If §5110(b)(1) stood alone, there might be something to Arellano's argument. (Again, assuming that §5110(b)(1) is a limitations period to which the *Irwin* presumption applies.) But §5110(b)(1) cannot be understood independently of §5110(a)(1), which makes the date of receipt the effective date "[u]nless specifically provided otherwise in this chapter." Arellano insists that the Secretary overreads "unless" by treating it as a signal that the enacted exceptions are exclusive. Brief for Petitioner 31–32. But the clause says more than "unless"—it says that the default applies "[u]nless *specifically provided* otherwise." §5110(a)(1) (emphasis added). That is an instruction to attend to specifically enacted language to the exclusion of general, unenacted carveouts. While Arellano claims to seek an equitable exception to a general rule, he actually seeks an equitable exception to an exception to a general rule. Structurally, that is a heavy lift. Moreover, §5110(b)(1) is nestled within a list of 15 other exceptions to §5110(a)(1)'s default rule, and, as we have already explained, the presence of this detailed, lengthy list raises the inference that the enumerated exceptions are exclusive.

Arellano also resists the proposition that the express accounting for disability-caused delay in §5110(b)(4) hurts his

Opinion of the Court

case.　On the contrary, he insists that it works in his favor. Citing *Young* v. *United States*, 535 U. S. 43 (2002), he maintains that an express tolling provision does not displace the presumption of tolling but rather demonstrates that a statute incorporates traditional equitable principles.　Brief for Petitioner 37–38.　According to Arellano, Congress's silence in §5110(b)(1) merely shows that it wanted those traditional principles to apply at full strength.　*Ibid.*; Reply Brief 19–20.

We disagree.　Section 5110(b)(4) does not help Arellano; for the reasons we have already explained, it illustrates why equitably tolling §5110(b)(1) is incongruent with the statutory scheme.　*Young* is inapposite.　There, we concluded that an "express tolling provision" for a time limit in a bankruptcy statute supported equitable tolling of a different time limit in the same statute.　535 U. S., at 53.　But that was largely because the express tolling provision authorized tolling where equity would not otherwise have permitted it. *Ibid.*　As a result, we interpreted the express tolling provision to "supplemen[t] rather than displac[e] principles of equitable tolling."　*Ibid.* (emphasis deleted).　Here, however, §5110(b)(4) does not authorize tolling that equity would not otherwise have allowed.　If anything, its conditional and narrow applicability limits tolling that might otherwise have occurred.　Though Arellano makes a valiant effort to turn a negative into a positive, §5110(b)(4) remains an obstacle to his interpretation.

Finally, Arellano contends that "the 'nature of the underlying subject matter' "—veterans' benefits—counsels in favor of tolling here.　Brief for Petitioner 33–34.　To support this proposition, he invokes *Brockamp*, which considered whether courts can equitably toll time limits for filing tax-refund claims.　519 U. S., at 348.　After holding that the statute's text and structure rebutted the *Irwin* presumption, we observed that the "nature of the underlying subject matter—tax collection—underscore[d] the linguistic point."

*Brockamp*, 519 U. S., at 352. "Tax law, after all, is not normally characterized by case-specific exceptions reflecting individualized equities." *Ibid.* By contrast, Arellano argues, providing benefits to veterans is a context in which individualized equities are paramount. See *King* v. *St. Vincent's Hospital*, 502 U. S. 215, 220–221, n. 9 (1991) ("[P]rovisions for benefits to members of the Armed Services are to be construed in the beneficiaries' favor").

If the text and structure favored Arellano, the nature of the subject matter would garnish an already solid argument. But the nature of the subject matter cannot overcome text and structure that foreclose equitable tolling. *Brockamp* turned to the "nature of the underlying subject matter" only to "underscor[e] the linguistic point." 519 U. S., at 352. Arellano, however, lacks the linguistic point. This is not a case in which competing interpretations are equally plausible; it is one in which Congress's choice is evident.[3]

\* \* \*

We hold that § 5110(b)(1) is not subject to equitable tolling and affirm the judgment of the Court of Appeals.

*It is so ordered.*

———————

[3] We resolve only the applicability of equitable tolling to § 5110(b)(1). We do not address the applicability of other equitable doctrines, such as waiver, forfeiture, and estoppel.

REPORTER'S NOTE

The attached opinion has been revised to reflect the usual publication and citation style of the United States Reports. The revised pagination makes available the official United States Reports citation in advance of publication. The syllabus has been prepared by the Reporter of Decisions for the convenience of the reader and constitutes no part of the opinion of the Court. A list of counsel who argued or filed briefs in this case, and who were members of the bar of this Court at the time this case was argued, has been inserted following the syllabus. Other revisions may include adjustments to formatting, captions, citation form, and any errant punctuation. The following additional edits were made:

None