RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 26a0126p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

JORGE OXLAJ-PEREZ,

                              *Petitioner*,

      *v.*

TODD W. BLANCHE, Acting U.S. Attorney General,

                              *Respondent*.

No. 25-3337

Appeal from the Board of Immigration Appeals.
No. A 208 759 263.

Decided and Filed:  April 29, 2026

Before: SILER, MOORE, and BLOOMEKATZ, Circuit Judges.

_____

## COUNSEL

_____

**ON BRIEF:**  Kevin Gardner, KBG IMMIGRATION LLC, Independence, Ohio, for Petitioner. Raya Jarawan, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

_____

## OPINION

_____

BLOOMEKATZ, Circuit Judge.  Jorge Oxlaj-Perez petitions for judicial review of a Board of Immigration Appeals decision that affirmed the Immigration Judge's denial of his application for asylum, withholding of removal, and protection under the Convention Against Torture.  The government asks that we summarily dismiss the petition for review as untimely.  It argues that Oxlaj-Perez filed the petition after the 30-day limitations period in 8 U.S.C. § 1252(b)(1), and that the statutory provision is not subject to equitable tolling.  We hold that the

§ 1252(b)(1) deadline is subject to equitable tolling.  But because Oxlaj-Perez is not entitled to tolling on this record, we dismiss the petition as untimely.

## BACKGROUND

Jorge Oxlaj-Perez is an indigenous Mayan Quiche man and citizen of Guatemala.  In December 2015, he entered the United States as an unaccompanied minor without admission or inspection, and he was placed in removal proceedings.  Oxlaj-Perez conceded removability and then applied for asylum, withholding of removal, and protection under the Convention Against Torture.  At a removal hearing in February 2022, Oxlaj-Perez testified about the alleged persecution he suffered because of his status as an Indigenous Quiche Mayan.  The IJ determined that Oxlaj-Perez was credible but concluded that he failed to meet the legal standards for his claims of relief.  The IJ then ordered that Oxlaj-Perez be removed to Guatemala.  Oxlaj-Perez timely appealed to the Board of Immigration Appeals, which affirmed the removal order on February 10, 2025.

Oxlaj-Perez petitioned for our review on April 29, 2025.

## ANALYSIS

Under 8 U.S.C. § 1252(b)(1), a "petition for review must be filed not later than 30 days after the date of the final order of removal."  Oxlaj-Perez's petition for review was filed 79 days after the Board's final order of removal, so it violated the 30-day statute of limitations.  Therefore, the government asks that we summarily deny Oxlaj-Perez's petition for review as untimely.  Oxlaj-Perez, however, argues that he is entitled to equitable tolling, which would pause the running of the statute of limitations if he had diligently pursued his rights but some extraordinary circumstance prevented him from bringing a timely action.  *See Arellano v. McDonough*, 598 U.S. 1, 6 (2023) (citing *Lozano v. Montoya Alvarez*, 572 U.S. 1, 10 (2014)).  The government contends that § 1252(b)(1) is not subject to equitable tolling.

We begin with the antecedent question of whether § 1252(b)(1) is subject to equitable tolling, and because we answer it in the affirmative, we then evaluate whether Oxlaj-Perez is entitled to equitable tolling.

**I.        Whether § 1252(b)(1) is Subject to Equitable Tolling**

We previously interpreted § 1252(b)(1) as a jurisdictional deadline and therefore held that it was not subject to equitable tolling.  But the Supreme Court's recent decision in *Riley v. Bondi* held that the statutory deadline is not jurisdictional, 606 U.S. 259, 277 (2025), so it requires us to revisit whether equitable tolling applies.  To answer that question, we apply the standard principles for interpreting statutory limitations periods. *See Enbridge Energy, LP v. Nessel ex rel. Mich.*, 608 U.S. ---, 2026 WL 1083312, at *5–6 (2026).

**A.        Recent Developments**

We begin our analysis by explaining how *Riley v. Bondi* changed our law in this area. Prior to *Riley*, we held that § 1252(b)(1)'s 30-day deadline was "mandatory and jurisdictional," *Prekaj v. INS*, 384 F.3d 265, 267 (6th Cir. 2004) (citation omitted), and that equitable tolling was unavailable because federal courts have "no authority to create equitable exceptions to jurisdictional requirements," *Bowles v. Russell*, 551 U.S. 205, 214 (2007).  But in *Riley*, the Supreme Court explicitly rejected our jurisdictional interpretation.  606 U.S. at 277.  The Court clarified that the § 1252(b)(1) deadline is a "claims-processing rule" rather than a jurisdictional one.  *Id.* at 275.  Therefore, the statutory deadline does not limit our jurisdiction but rather "regulate[s] the timing of [requests] brought before the court." *Dolan v. United States*, 560 U.S. 605, 610 (2010).

Because we previously deemed the statutory deadline jurisdictional, we always considered it a "mandatory" deadline that we had no power to equitably toll.  *See Prekaj*, 384 F.3d at 267.  It is therefore unsurprising that our cases describing the deadline as "mandatory" did not determine whether tolling would be appropriate if the deadline were not jurisdictional. *See, e.g.*, *Perez-Aguilar v. Garland*, No. 21-3757, 2022 WL 796109, at *2 (6th Cir. Mar. 16, 2022).  And because we never conducted that analysis, we do not assume post-*Riley* that § 1252(b)(1) is a "mandatory" claims-processing rule in the sense that is it is "not susceptible" to equitable tolling.  *See Nutraceutical Corp. v. Lambert*, 586 U.S. 188, 192 (2019).

We recognize that some post-*Riley* decisions have continued to describe § 1252(b)(1)'s 30-day deadline as a "mandatory" one not subject to tolling.  Unpublished decisions of our court

and others have applied the "mandatory" label based on citations to *Riley*, without ever examining whether the statute, when analyzed as a claims-processing rule, would permit tolling. *See, e.g.*, *Aleman Garcia v. Bondi*, No. 25-3666, 2025 LX 458035, at *5 (6th Cir. Oct. 3, 2025) (order); *Marroquin-Zanas v. Bondi*, No. 22-1122, 2025 WL 2694111, at *1 (4th Cir. Sep. 23, 2025) (per curiam); *Fuentes Aguilar De Perez v. Bondi*, No. 24-4605, 2025 WL 3657596, at *2 (9th Cir. Dec. 17, 2025). The Fifth Circuit similarly viewed *Riley* as suggesting an answer to the tolling question. *Kun Liao v. Bondi*, 162 F.4th 519, 524 (5th Cir. 2025). This confusion in our and other courts is understandable, given that *Riley* queries at the outset whether the deadline is "simply a mandatory claim-processing rule" or a "jurisdictional requirement." 606 U.S. at 263. But *Riley* then turns to an analysis of whether the deadline is jurisdictional or a "claims-processing rule," *id.* at 275, and concludes that "the better argument" is that § 1252(b)(1) is a "quintessential claim-processing rule," *id.* at 273–74 (citation modified)—without the mandatory label. Therefore, we do not take the reference to a "mandatory claim-processing rule" in *Riley* to resolve the tolling question.

Instead, as the government concedes, the *Riley* Court left open the question of whether equitable tolling applies to § 1252(b)(1) because the government "chose[] not to seek dismissal of Riley's case" as untimely. *Id.* at 263; *see also id.* at 302–03 (Sotomayor, J., dissenting) ("[T]he courts of appeals should consider applying standard principles of equitable tolling" now that § 1252(b)(1)'s "deadline is not jurisdictional."). We turn to that question now, following the Supreme Court's directions on how to determine whether the statutory deadline is subject to equitable tolling.

## B.     Interpreting § 1252(b)(1)

Section 1252(b)(1) is a nonjurisdictional statute of limitations, so our analysis begins with the "rebuttable presumption" that the deadline is subject to equitable tolling. *Holland v. Florida*, 560 U.S. 631, 645–46 (2010) (quoting *Irwin v. Dep't of Veterans Affs.*, 498 U.S. 89, 95–96 (1990)). The Supreme Court has explained that "Congress legislate[s] against a background of common-law adjudicatory principles," including the principle of "[e]quitable tolling, a long-established feature of American jurisprudence." *Lozano*, 572 U.S. at 10 (first alteration in original) (internal quotation omitted). Because "Congress must be presumed to draft limitations

periods in light of this background principle," *Young v. United States*, 535 U.S. 43, 49–50 (2002), the Court has held that equitable tolling is "likely to be a realistic assessment of legislative intent." *Irwin*, 498 U.S. at 95. "It is hornbook law that limitations periods are customarily subject to equitable tolling," *Young*, 535 U.S. at 49 (internal quotation omitted), so courts do not "understand Congress to alter that backdrop lightly," *Boechler, P.C. v. Commissioner*, 596 U.S. 199, 209 (2022). Indeed, "most" filing deadlines are subject to equitable tolling, *id.* at 211, and "the simple fact that a deadline is phrased in an unqualified manner does not necessarily establish that tolling is unavailable," *Nutraceutical*, 586 U.S. at 193. Instead, we look to see if there are "good reasons" to conclude that tolling should not be available. *Enbridge*, 608 U.S. at ---, 2026 WL 1083312, at *8. The presumption is rebutted only "if equitable tolling is inconsistent with the statutory scheme." *Arellano*, 598 U.S. at 6–7. Therefore, we begin with the presumption that § 1252(b)(1) is subject to equitable tolling and analyze the statute's "text, structure, and context" to determine whether it rebuts the presumption. *Enbridge*, 608 U.S. at ---, 2026 WL 1083312, at *8.

First, we consider the text of § 1252(b)(1). The statute provides that the "petition for review must be filed not later than 30 days after the date of the final order of removal." 8 U.S.C. § 1252(b)(1). On its face, § 1252(b)(1) is a straightforward limitations period; it neither explicitly permits nor prohibits equitable tolling. Given the presumption that Congress intends for tolling, the fact that the statute "does not expressly prohibit equitable tolling" is critical. *Boechler*, 596 U.S. at 209. Though it says the petition "must be filed" within 30 days, this "mandatory language is not sufficient, on its own, to rebut the presumption of equitable tolling." *Enbridge*, 608 U.S. at ---, 2026 WL 1083312, at *6 (citing *United States v. Kwai Fun Wong*, 575 U.S. 402, 410–11, 420 (2015)). The text, to be sure, is "consistent with treating its deadline as mandatory," but the Supreme Court has recognized that statutes of limitation written in unqualified terms may still be subject to equitable tolling. *Id.*; *see also Kwai Fun Wong*, 575 U.S. at 408 n.2, 410–12; *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 541 n.2, 559 (1974). And the statutory "deadline is not written in 'emphatic form' or with 'detailed' and 'technical' language, nor is it reiterated multiple times." *Boechler*, 596 U.S. at 210. Therefore, the plain language of the statute does not displace the presumption of tolling.

The language of § 1252(b)(1) mirrors the text of other statutes to which the Supreme Court has held equitable tolling applies.  In *Boechler*, for example, the Court held that a statutory requirement that a "person may, within 30 days of a determination under this section, petition the Tax Court for review of such determination" did not rebut the presumption of equitable tolling. *Id.* at 204 (quoting 26 U.S.C. § 6330(d)(1)).  In reaching that conclusion, the Court pointed to the same elements of the statutory text that are present in § 1252(b)(1).  *Id.* at 209.  Specifically, the Court focused on the fact that the statutory text did not "expressly prohibit" tolling, and that it was a "short, 30-day time limit" that was "directed" at the petitioner, "not the court."  *Id.*  So too here, the text does not "expressly prohibit" tolling, it provides a "short, 30-day time limit," and it is "directed" at the petitioner, "not the court."

Likewise, in *Irwin*, the Supreme Court held that a similar filing deadline in Title VII was subject to equitable tolling.  The statute provided that an individual seeking review of an EEOC action "may file" a lawsuit "[w]ithin thirty days of receipt of notice of final action."  498 U.S. at 94 (quoting 42 U.S.C. § 2000e–16(c)).  The Court later explained that *Irwin* involved a "statutory time limit with the same characteristics" as the one in *Boechler*—an unqualified limitations period of 30 days that is directed at the employee petitioner, rather than the court. *Boechler*, 596 U.S. at 209.

The Supreme Court has applied equitable tolling even when the statutory provision contained more "strict [and] mandatory" language than here.  *Enbridge*, 608 U.S. at ---, 2026 WL 1083312, at *6.  In *Kwai Fun Wong*, for example, the Court held that a provision of the Federal Tort Claims Act was subject to equitable tolling even though the text provided that "a tort claim against the United States 'shall be *forever barred*'" unless "brought to federal court 'within six months' after the agency acts on the claim."  575 U.S. at 405 (quoting 28 U.S.C. § 2401(b)) (emphasis added).  Although that statutory language was stringent, the Court held that "nothing about § 2401(b)'s core language is special" and that it did "not preclude tolling."  *Id.* at

420.  Similarly, nothing in § 1252(b)(1)'s text "is special," and the language instead mirrors that of statutes the Court has held are subject to equitable tolling.[1]

Section 1252(b)(1)'s structure also lacks any of the traditional characteristics that the Supreme Court has held rebut the presumption of tolling.  Just last week, in *Enbridge Energy, LP v. Nessel ex rel. Michigan*, the Supreme Court held that the "explicit listing of exceptions" to the deadline to remove a case to federal court was the "decisive" consideration in determining that the statute could not be equitably tolled.  608 U.S. at ---, 2026 WL 1083312, at *6 (citation omitted).  There, "[m]ore important" than the text was the "structure," because Congress enacted a "highly detailed scheme" that already provided "equitable, case-specific" exceptions to the deadline within the removal statute and in external provisions.  *Id.* at ---, 2026 WL 1083312, at *6–7.  As *Enbridge* recognized, the Court has "repeatedly held" that when Congress lists exceptions to a deadline in a detailed manner, it "strongly indicates" that Congress did not intend for additional "open-ended" equitable tolling.  *Id.* at ---, 2026 WL 1083312, at *6 (citation omitted).

Several other cases demonstrate this principle.  In *United States v. Brockamp*, the Court held that the statutory deadline for filing administrative claims for tax refunds was not susceptible to equitable tolling.  519 U.S. 347, 350 (1997).  The Court reasoned that the refund statute's "detail, its technical language, the iteration of the limitations in both procedural and substantive forms, and the explicit listing of exceptions" demonstrated a congressional intent to

---

[1]We note, too, that whether Congress uses mandatory language in a statute of limitations tends to follow from whether the subject of the limitations provision is the person filing or the filing itself.  When Congress frames the provision around the person filing, it typically uses permissive language. *See, e.g.*, *Boechler*, 596 U.S. at 204 ("[A] person may, within 30 days . . . petition . . . ." (quoting 26 U.S.C. § 6330(d)(1))); *Irwin*, 498 U.S. at 94 ("Within thirty days of receipt of notice of final action . . . an employee or applicant . . . may file a civil action . . . ." (quoting 42 U.S.C. § 2000e-16(c) (1990))); *Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 154 (2013) ("[A] provider of services 'may obtain a hearing' . . . if 'such provider files a request for a hearing within 180 days . . . .'" (quoting 42 U.S.C. § 1395oo(a)(3))).  By contrast, Congress tends to use more mandatory language when it describes the deadline as a requirement of the filing itself. *See, e.g.*, *Enbridge*, 608 U.S. at ---, 2026 WL 1083312, at *3 ("[The] notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt" (quoting 28 U.S.C. § 1446(b)(1))); *Arellano*, 598 U.S. at 5 ("[T]he effective date of an award . . . shall not be earlier than the date of receipt . . . ." (quoting 38 U.S.C. § 5110(a)(1))); *Kwai Fun Wong*, 575 U.S. at 410 ("[A] tort claim . . . shall be forever barred . . . ." (quoting 28 U.S.C. § 2401(b))); *Brockamp*, 519 U.S. at 351 ("[A] '[c]laim for . . . refund . . . shall be filed by the taxpayer within 3 years . . . .'" (quoting 26 U.S.C. § 6511(a))).  That distinction makes sense because a person is not required to file, but "may" do so within a given time period.  Therefore, the use of mandatory language may have more to do with the grammatical structure of the limitations period, rather than demonstrating a meaningful difference in congressional intent.

preclude equitable tolling. *Id.* at 352. Similarly, in *Arellano*, the statute contained "detailed instructions" for calculating the effective date for a benefits award, including sixteen exceptions to the default calculation rule that operated as both "time constraints" and "substantive limitations" on benefit awards. 598 U.S. at 8. The benefits statute therefore mirrored *Brockamp* in its detail, iteration of limitations in procedural and substantive forms, and explicit listing of exceptions, and these features rebutted the presumption of equitable tolling. *Id.* at 9. For these various statutes, "Congress specified the cases in which it wanted to authorize equitable tolling," so the Court held that their structures were "inconsistent" with the presumption of equitable tolling. *Enbridge*, 608 U.S. at ---, 2026 WL 1083312, at *7–8.

By contrast, § 1252(b)(1) is an ordinary limitations statute that does not have any of the structural features that the Supreme Court relied upon in *Enbridge*, *Brockamp*, and *Arellano* as indications that Congress meant to preclude tolling. Unlike the statutes in those cases, § 1252(b)(1) "use[s] fairly simple language," *Brockamp*, 519 U.S. at 350, and does not list any exceptions to the deadline, equitable or otherwise. Therefore, the text and structure do not rebut the equitable tolling presumption.

Next, we consider the provisions surrounding § 1252(b)(1) and the broader context of the Immigration and Nationality Act. Section 1252(b), after establishing the 30-day filing deadline at issue here, describes several other procedural rules, including the briefing schedule. *See* 8 U.S.C. § 1252(b)(1)–(3). In setting the parameters for briefing on the petition for review, § 1252(b)(3)(C) provides that the court may extend the briefing schedule "for good cause shown," but shall dismiss a late-filed brief "unless a manifest injustice would result." We view these provisions as consistent with recognizing that Congress, per usual, also expected that the filing deadline in § 1252(b)(1) could be tolled for equitable reasons. As the Supreme Court explained, we should not draw a "negative inference" against tolling a limitations period just because there are express equitable provisions in other parts of the statute. *Young*, 535 U.S. at 52. Rather, the flexibility in the briefing schedule demonstrates that Congress viewed the statute not as having unalterable rules, but as being susceptible to equitable considerations. For instance, in allowing briefing extensions for "good cause," Congress provided the courts with "a broad, generally applicable power" to delay briefing. *Enbridge*, 608 U.S. at ---, 2026

WL 1083312, at *7 (citation omitted).  Likewise, by allowing courts to grant relief for "manifest injustice" if a petitioner misses a briefing deadline, Congress preserved the possibility for relief even if an individual was not diligently pursuing their rights.  Congress accepted the possibility of delay at the briefing stage—even for reasons that would not necessarily merit equitable tolling—so it is hard to see why applying equitable tolling at the petition stage would be inconsistent with the statutory scheme.

Looking beyond § 1252(b), the INA's overall scheme provides even more support for allowing equitable tolling.  Like the broader regulatory scheme in *Boechler*, the immigration system is one where "laymen, unassisted by trained lawyers, often initiate the process," which weighs in favor of equitable tolling.  596 U.S. at 209 (quoting *Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 160 (2013)).  Accordingly, we have allowed equitable tolling for other deadlines in the INA that similarly have unqualified language.  For example, we have held that equitable tolling applies to the 90-day deadline to file motions to reopen Board proceedings. *Sarkisov v. Bondi*, 160 F.4th 696, 701 n.1 (6th Cir. 2025) (equitable tolling for 8 U.S.C. § 1229a(c)(7)(C)(i), which states "the motion to reopen shall be filed within 90 days"); *Barry v. Mukasey*, 524 F.3d 721, 724 (6th Cir. 2008) (collecting cases).  The Board has also applied equitable tolling to late-filed motions to reopen, *e.g.*, *Matter of Khurram Jehangir Khan*, No. AXX XX2 144, 2007 WL 2074553, at *1–2 (BIA June 15, 2007), and it recently held that equitable tolling applies to late-filed notices of appeal to the Board, *Matter of Morales-Morales*, 28 I. & N. Dec. 714, 716–17 (BIA 2023) (equitable tolling for 8 C.F.R. § 1003.38(b)).  The recognition of equitable tolling at other stages in the removal process suggests that, despite the interest in expeditious proceedings, equitable tolling is consistent with the overall statutory scheme of the INA.

Moreover, that equitable tolling is available elsewhere in the INA is unsurprising given the "nature of the subject matter" at issue.  *See Enbridge*, 608 U.S. at ---, 2026 WL 1083312, at *7 (citation omitted).  Petitions for review of Board decisions often raise humanitarian claims.  For example, petitioners may seek relief against deportation because they would likely be tortured in their home country, *e.g.*, *Kamar v. Sessions*, 875 F.3d 811, 821 (6th Cir. 2017), or because deportation would result in "exceptional and extremely unusual hardship" to the

petitioner's child, *e.g.*, *Wilkinson v. Garland*, 601 U.S. 209, 211–12 (2024) (quoting 8 U.S.C. § 1229(b)(1)(D)). Equitable tolling makes sense in this context, where the claims at issue require a case-by-case evaluation of "individualized equities" to determine whether relief should be granted. *See Arellano*, 598 U.S. at 13–14 (citation omitted); *see also Burnett v. N.Y. Cent. R.R. Co.*, 380 U.S. 424, 434 (1965) (observing that "humanitarian purpose" may weigh in favor of tolling).

Therefore, because § 1252(b)(1)'s text, structure, and context are not inconsistent with equitable tolling, we hold that the 30-day deadline is subject to equitable tolling.

### C. Government's Counterarguments

As an initial matter, we reject the government's argument that Oxlaj-Perez waived any challenge to the timeliness of his petition for review by failing to raise it in his opening brief. As a claims-processing rule, the burden is on the government to raise timeliness under § 1252(b)(1); if it fails to, we consider the limitations defense either waived or forfeited. *Riley*, 606 U.S. at 263, 272, 277; *see also Santos-Zacaria v. Garland*, 598 U.S. 411, 423 (2023). Thus, Oxlaj-Perez was not required to make an argument for equitable tolling of the statutory deadline until the government asserted that his petition for review was untimely. The government's attempt to fault Oxlaj-Perez for not raising tolling in his opening brief is not well taken. Since Oxlaj-Perez raised his tolling arguments in a subsequent brief, he did not waive or forfeit them.

The government next makes several arguments for why § 1252(b)(1)'s text, structure, and context rebut the presumption of equitable tolling, but none of its arguments are persuasive.

As to text, the government contends that the "unqualified language" of the statute "'express[es] a clear intent to compel rigorous enforcement.'" Resp. Br. at 18 (quoting *Nutraceutical*, 586 U.S. at 193). We recognize that the Fifth Circuit too relied on § 1252(b)(1)'s unqualified language in concluding that it could not toll the 30-day deadline. *Kun Liao*, 162 F.4th at 524. However, as we explained, the Supreme Court is clear that "the simple fact that a deadline is phrased in an unqualified manner does not necessarily establish that tolling is unavailable." *Nutraceutical*, 586 U.S at 193; *see also Enbridge*, 608 U.S. at ---, 2026 WL 1083312, at *6. Given the presumption for tolling, we must find good reasons to believe that

Congress intended to preclude tolling, not just unqualified language setting forth a deadline. Indeed, neither the government nor Fifth Circuit identifies any case (and we are aware of none) where statutory language like we have here was dispositive for rebutting the presumption. Instead, as detailed above, the Supreme Court has repeatedly found that equitable tolling does apply to statutory deadlines with similar or even more stringent language. *See Kwai Fun Wong*, 575 U.S. at 420; *Am. Pipe*, 414 U.S. at 559. So, the unqualified language of § 1252(b)(1) is insufficient to rebut the presumption of equitable tolling.

As to context, the government turns not to provisions in the INA, but to the Federal Rules of Appellate Procedure, to say that § 1252(b)(1) is not subject to equitable tolling. The government relies on *Nutraceutical* which held that a class-action deadline in Federal Rule of Civil Procedure 23(f) was not subject to equitable tolling because other provisions of the Federal Rules "single[d] out Rule 23(f) for inflexible treatment" by prohibiting courts from granting extensions to the deadline for interlocutory review. 586 U.S. at 193. Because the Rules themselves provided that the "type of filing at issue [in Rule 23(f)] may not be extended," the Court held that the Rules "express[ed] a clear intent to compel rigorous enforcement of Rule 23(f)'s deadline." *Id.* Here, the government points to Federal Rule of Appellate Procedure 26(b)(2), which states that an appellate court may not extend the time to file a petition for review of an administrative agency order, such as the Board decision at issue in this case, "unless specifically authorized by law." Fed. R. App. P. 26(b)(2). The government contends that this provision mandates inflexible treatment for all deadlines to petition for review of an administrative agency order, including orders from the Board under § 1252(b)(1).

But *Nutraceutical*'s analysis of Rule 23(f) is inapposite here. There was no presumption of tolling in *Nutraceutical* because the case involved only a Federal Rule of Civil Procedure. But where "the relevant filing deadline is provided by a statute and not a Federal Rule," we look to that statute to determine tolling. *Nelson v. SEC*, 138 F.4th 514, 523 (D.C. Cir. 2025). And there is a presumption of tolling for § 1252(b)(1). This presumption reflects the "legislative intent" to allow for tolling, *Irwin*, 498 U.S. at 95, so it takes more evidence to rebut the presumption than to hold that a Rule's deadline is mandatory where no presumption exists. Whereas the Supreme Court in *Nutraceutical* was asking "whether the text of the rule leaves

room for [] flexibility" of equitable tolling given the context of the Rules as a whole, 586 U.S. at 192, the question here is whether equitable tolling is inconsistent with the statutory text and the INA's statutory scheme such that it rebuts the presumption of tolling, *Arellano*, 598 U.S. at 6–7. And, as the D.C. Circuit noted, "the Supreme Court has yet to extend [*Nutraceutical*'s] constraint on the Federal Rules to statutory deadlines." *Nelson*, 138 F.4th at 523. Therefore, we decline to hold that the language of Federal Rule of Appellate Procedure 26(b)(2) can overcome the presumption of equitable tolling for a statutory deadline.

The government makes an additional contextual argument based on § 1252(b)(1)'s location within the INA's provision for judicial review and its linkage to "the adjacent subsection granting courts of appeals exclusive authority to review immigration petitions." Resp. Br. at 18. The government argues that the provision's placement "supports a description of the time limit as a mandatory 'requirement[] for appellate jurisdiction.'" *Id.* (alteration in original) (quoting *Dessouki v. Att'y Gen. of U.S.*, 915 F.3d 964, 966 (3d Cir. 2019)). However, the Supreme Court in *Riley* explicitly rejected the characterization of § 1252(b)(1) as a jurisdictional rule. 606 U.S. at 277. So, regardless of statutory placement, § 1252(b)(1) is not a mandatory requirement for appellate jurisdiction.

Insofar as the government contends that the deadline's placement otherwise matters, that argument is unpersuasive. We stated in *Enbridge* that a statutory provision's "placement near and interrelation with the jurisdictional statutes suggests stricter enforcement," but in affirming our decision, the Supreme Court never mentioned this factor. *Nessel ex rel. Mich. v. Enbridge Energy, LP*, 104 F.4th 958, 970 (6th Cir. 2024), *aff'd*, 608 U.S. ---, 2026 WL 1083312 (2026). And we have never held that placement is enough to rebut the presumption of tolling. After all, the Supreme Court has found that equitable tolling applies to a statutory deadline where "the jurisdictional grant and filing deadline appear in the same provision, even the same sentence." *Boechler*, 596 U.S. at 206. Here, the Supreme Court noted that "[n]either the particular subsection nor the broader section in which [§ 1252(b)(1)] is placed concerns jurisdiction," *Riley*, 606 U.S. at 274, so the proximity argument is even weaker. The government provides no explanation for why it matters that the deadline is placed "within the INA's 'Judicial review' provision and expressly linked to the adjacent subsection granting courts of appeals exclusive

authority to review immigration petitions," other than the jurisdictional argument *Riley* rejected. Resp. Br. at 18. It is logical for a statute of limitations provision to be in the judicial review provision of the statute, and the government does not explain why this logical placement is inconsistent with tolling. We are therefore unpersuaded by the argument that § 1252(b)(1)'s context rebuts the presumption of tolling.

Turning to the statutory scheme more broadly, the government contends that the nature of administrative removal—including the concern for finality and expediency—is inconsistent with case-specific exceptions like equitable tolling. As explained above, the humanitarian nature of petitions for review instead militates in favor of tolling. But no matter how it cuts, "the nature of the subject matter" factors in only to "garnish an already solid argument." *Enbridge*, 608 U.S. at ---, 2026 WL 1083312, at *7 (citation omitted). We note that the Supreme Court has never used the "nature of the subject matter" alone to rebut the presumption of equitable tolling when the text and structure of the statute do not point against the presumption. *Cf. Arellano*, 598 U.S. at 14 ("[T]he nature of the subject matter cannot overcome text and structure that foreclose equitable tolling."); *Brockamp*, 519 U.S. at 352. Since the government fails to support its argument that the nature of administrative removal can itself rebut the presumption of equitable tolling, we decline to hold that the asserted public interest in the finality or speed of immigration proceedings is enough to preclude tolling here.

As to the government's concerns, any new administrability issues in the immigration system were created by *Riley* and will not be significantly increased by the availability of equitable tolling. Viewing § 1252(b)(1) as a jurisdictional rule, our court was required to dismiss *sua sponte* any untimely petition for review of an order from the Board. In holding that § 1252(b)(1) is a claims-processing rule (and not jurisdictional), the Supreme Court required the government to invoke the petition's untimeliness, otherwise it would waive or forfeit the argument. *See Riley*, 606 U.S. at 277; *Santos-Zacaria*, 598 U.S. at 423. Thus, irrespective of our tolling decision, the government must move to dismiss an untimely petition for review or assert that the petition is untimely in its merits briefing (as it did here), and we already allow and consider any response by the petitioner. *See* Fed. R. App. P. 27(a)(3)(A); Fed. R. App. P. 28(c). An appellate court's consideration of a petitioner's equitable tolling arguments in response to the

government's invocation of § 1252(b)(1)'s deadline will not significantly increase the administrative burden, especially since "federal courts sparingly bestow equitable tolling." *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 560 (6th Cir. 2000). We do not expect many petitioners to meet the high burden of showing entitlement to equitable tolling.

To the extent the government contends that additional untimely petitions for review will stall the removal process, we note that unless the court grants a stay of removal, the statutory scheme allows the government to remove a petitioner after an order of removal without waiting to see whether the petitioner will file a late petition for review. *See Johnson v. Guzman Chavez*, 594 U.S. 523, 534–35 (2021). Therefore, unlike the "possibility of a late removal" in *Enbridge*, the possibility of a belated petition does not "hang over a case" or "generat[e] uncertainty." *Enbridge*, 608 U.S. at ---, 2026 WL 1083312, at *7. Further, the concerns with delay here are not meaningfully different than those with filing deadlines for motions to reopen or appeals to the Board, which as described above are subject to equitable tolling. *See supra* p. 10. So we are unpersuaded that recognizing the availability of equitable tolling will create significant administrability issues that hamper removals.

The government's final schematic argument is that the legislative history of § 1252(b)(1) rebuts the presumption of tolling. The government notes that Congress shortened the time to seek judicial review in the INA compared to the predecessor statute, *Stone v. INS*, 514 U.S. 386, 400 (1995), and changed the statutory language from "may be filed" to "must be filed," 8 U.S.C. § 1105a(a)(1) (1994); now 8 U.S.C. § 1252(b)(1). *See* Resp. Br. at 20. But the previous version said that the petition "may be filed *not later than*" the deadline, 8 U.S.C. § 1105a(a)(1) (1994) (emphasis added), and we do not read that phrasing to be any more permissive than "must." Furthermore, as already discussed, these legislative changes do not rebut the presumption of tolling because the Supreme Court has applied equitable tolling to similar 30-day filing deadlines, *Boechler*, 596 U.S. at 209; *Irwin*, 498 U.S. at 94, and to statutory deadlines with unqualified language, *Kwai Fun Wong*, 575 U.S. at 420.

Even so, the government contends that these changes bolster the conclusion that the legislative intent was to preclude equitable tolling. Specifically, the government argues that

these changes further Congress's "fundamental purpose in adopting the original provisions," which was "to expedite both the initiation and the completion of the judicial review process." Resp. Br. at 20–21 (internal quotations omitted). We agree that the shortened filing period demonstrates Congress's intent to further expedite judicial review of removal proceedings, but we disagree that it demonstrates that Congress sought to eliminate equitable tolling from that review process. Congress did not make the deadline jurisdictional nor did it expressly eliminate equitable exceptions, so the presumption of equitable tolling persists even after the legislative changes. Recognizing equitable tolling does not undermine the congressional intent because removal proceedings will still be expedited by the shortened filing period as compared to the previous version of the statute. *See Guerrero-Lasprilla v. Barr*, 589 U.S. 221, 235–36 (2020).

Therefore, each of the government's attempts to rebut the statutory presumption of equitable tolling fails, and we hold that § 1252(b)(1) can be equitably tolled.

## II.    Whether Oxlaj-Perez is Entitled to Equitable Tolling

Having determined that the filing deadline in § 1252(b)(1) can be equitably tolled, we turn to the question of whether Oxlaj-Perez is entitled to equitable tolling. Equitable tolling is available if he shows "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland*, 560 U.S. at 649 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). We consider five factors to determine if Oxlaj-Perez has been diligent: (1) his "lack of notice of the filing requirement"; (2) his "lack of constructive knowledge of the filing requirement"; (3) his "diligence in pursuing [his] rights"; (4) the "absence of prejudice" to the government; and (5) his "reasonableness in remaining ignorant of the legal requirement for filing his claim." *Jin Yin Zhou v. Bondi*, 134 F.4th 946, 949 (6th Cir. 2025) (quoting *Mezo v. Holder*, 615 F.3d 616, 620 (6th Cir. 2010)).

Applying these factors, we hold that Oxlaj-Perez has not established that he is entitled to equitable tolling. *First*, Oxlaj-Perez had actual notice of the filing requirement because it was included with the Board's decision. A.R. 2 ("[A]ny petition for review of the attached decision must be filed with and received by the appropriate court of appeals within 30 days of the date of the decision."). *Second*, even if Oxlaj-Perez lacked actual notice, he had constructive knowledge

of the filing requirement because the "existence of a publicly available statute setting forth a filing deadline at the very least establishes constructive knowledge." *Wershe v. City of Detroit*, 112 F.4th 357, 366 (6th Cir. 2024). *Third*, Oxlaj-Perez contends that "his limited education, language barriers, and financial constraints prevented him from obtaining timely legal advice" and that once he secured representation, he promptly appealed the Board's decision. Supp. Br. at 3. But Oxlaj-Perez presents no details about his legal consultations, so he has not established that he acted diligently during the 79 days before he filed his petition for review. We also recognize that educational, language, and financial barriers are not "exceptional" in this context; granting equitable tolling each time a petitioner relies on general assertions about these barriers would let a narrow exception to the 30-day deadline swallow the rule. *Fourth*, the government may be prejudiced by an untimely filing to the extent it extends removal proceedings and requires the government to defend a Board decision on the merits. Though we note that in this case, because the government did not raise timeliness until the briefing stage, the government has already briefed the merits. *Fifth*, it was not reasonable for Oxlaj-Perez to remain ignorant of the legal requirement for filing his claim when it was expressly stated in the letter sent with the Board's decision. Therefore, Oxlaj-Perez has not shown that he has been pursuing his rights diligently, and he is not entitled to equitable tolling.

## CONCLUSION

We dismiss Oxlaj-Perez's petition for review as untimely.